Your Honor, this is the first case of the morning call, People of the State of Illinois v. Maurice Hall, 210-307, arguing on behalf of the appellant, Ms. Kathleen Hamill, on behalf of the appellate, Ms. Joan Christian. Good morning, Your Honors. Kathleen Hamill on behalf of the defendant appellant. Mr. Hall stands convicted of aggravated criminal sexual abuse. The crime was committed against his girlfriend, who was 15 years old. She's referred to as CO on the record. And also aggravated battery of the child. That crime was committed against the child of defendant and CO. He's referred to as JO on the record. He was about two months old at the time that this happened. He has received consecutive sentences of 23 years and five years for these offenses. This is an extremely odd case as far as the way things happened procedurally. And I am prepared to do a very quick review of that in order to get it fresh in all of our minds, unless you think it's not necessary. If you wish. Pardon? If you wish, go ahead. I will, okay. Originally, the defense filed a pretrial motion to suppress statements that he had made on February 13th and February 14th of 2006. But it was undisputed on this record that the February 13th statement was made without Miranda warnings. And also that the February 14th statement was preceded by Miranda warnings. At a suppression hearing, a pretrial suppression hearing held on this motion, the state conceded that the February 13th statement was inadmissible due to the Miranda violation. And so the only issue that was addressed at the hearing was whether the February 14th statement should be suppressed under the rule of Siebert v. Missouri, which is a United States Supreme Court case that bars the admission of statements that have been deliberately obtained by the use of the question first, warn later interrogation tactic. Let's talk about deliberate. Are you submitting to us that you believe that the police officers deliberately failed to give the Miranda warnings? I am submitting first that it appears that their claim that they did not do so deliberately was very disingenuous, and there's some good reasons for looking at it that way. Why? The first is the fact that they initially claimed that they were not initially questioning the defendant as a suspect in this case. As I noted in my reply brief, very recently in the People v. Christina Beltran case, this court took note of the fact that in that case, Beltran was in the hospital at the time she was interrogated, the question was whether or not the interrogation was custodial. And this court noted that one factor that favored a finding of custody was the fact that Beltran went to the hospital knowing that she had, that her child had died in her home while she was its caretaker and that that necessarily would make her a suspect. Well, that's kind of a two way street. The police knew that Joe had been severely injured in his home by a caretaker because they did know, the defendant and the hospital continually explained that they were the only people that ever took care of this baby, so. Okay, so assuming that they questioned him initially as a suspect, and I think one of the police doctors may have kind of admitted that he was probably a suspect. The other one said that we questioned him as a witness. Yes. So assuming that he was being initially brought in as a suspect, what else can you show or point to to say that the police officers deliberately failed to give the Miranda warnings as opposed to inadvertently failed to give the Miranda warnings? Well, the fact that he was a suspect would certainly mean that he should have been told that he was being interrogated for reasons other than just to obtain information about what he had seen. But I think that it really got stepped up where the way that it went was at first they kind of told, they represented to him that they knew that CEO was the offender and they simply were trying to get his corroboration and they made up the story in which they said, we're trying to get your corroboration so that we can tell the doctors what happened, so the doctors will be able to treat the child, which is just patently absurd. And then they asked him if he did anything to hurt the baby, which is clearly designed to elicit an incriminating- Yes, yes, that's what they did. After they said they needed that, then they got into, aren't babies fragile? And then that caused the defendant to respond, yes, that sometimes CEO had told him not to tug at the baby like he did. Assuming, arguendo, that all of that is true, and those are the facts, that's what's set out in your briefs, the defense briefs, the state's briefs, there's no question. All those questions were asked, all of those things occurred. Assume, arguendo, that that's all true. But assume you have a police officer who the right hand didn't know what the left hand was doing. I thought you, Miranda, I didn't know, I thought you did. Is it deliberate? Well, I think here, that's what the police, that was their explanation, right. However, here, Roberts and Ranallo are both there, right at the beginning, and they are there when Roberts asks that question. The thing is, when Roberts, actually, and it's right before Roberts asked, did you do anything to your baby? When the defendant, when he says, aren't babies fragile? And the defendant says, sometimes CEO talked to me about me tugging at the baby. At that point, the defendant is clearly not talking about what he witnessed. He's talking about what he did. And at that point, Roberts should have said, no, you have the right to remain silent. And instead- No question, no question. But he didn't. So let's assume now that he didn't, nobody Mirandized him, not because they were trying to set up a better confession subsequently. But let's assume that they just failed to ask, or to advise a Miranda. It was inadvertent advice of Miranda. Are you now out of the box with your argument, or does Seabird tell you otherwise? Seabird says, in Seabird, the officers said it was deliberate. However, Seabird itself acknowledged that we can't always expect officers to be that candid. The officers also said that what they did was not deliberate in People v. Lopez, a case that was up in front of our Supreme Court. And nevertheless, the court looked at the facts and said, we don't believe you. And found that that conclusion was contrary to the manifest way to the evidence. But didn't Lopez then allow the subsequent statement to come in? It did not allow the statement to come in that was, no, no, they didn't. They did not allow the statement to come in that was the warned statement in Lopez. Yeah. They didn't allow the warned statement in Lopez, the subsequent warned statement? Yes, yes, and nor did they in Alfaro, which is another fact pattern that was similar to this. And again, in Alfaro, although the police did not directly maintain that it was deliberate, I mean, that it was not deliberate, they made up a story in which it was completely benign. They said that the person was, that the defendant was questioned as a witness rather than a suspect at a time when they knew that he was, he had already been incriminated by a girlfriend's accusation. And so they had probable cause for arrest. Let me ask you a threshold question from a procedural standpoint. As I understand in the trial, the February 13th statement was introduced, albeit perhaps to set the stage for a long interrogation and show the circumstances of the long interrogation. That being the case, are you saying that the admission of the February 14th statement would be harmless error? I guess my question is, in order to qualify for relief on this appeal, does the defendant now need to show that neither the February 13th to 14th statements are admissible? Wouldn't you have to show that? Yes, yes, yes. If the February 13th statement was admissible, then if any of these statements are admissible, I think the defendant has got a problem. But here, the state conceded pre-trial that the February 13th statement was not admissible. And I did explain in my brief that I believe that was found, that that was a well-reasoned decision that they made there. That- But nevertheless, it was introduced at trial, albeit for a strategic purpose, perhaps. It was, yeah, it was introduced at trial, I think, clearly as damage control. If you, you know, I don't know if you view the digital recordings, but if the February 13th statements are, the actual interviews cover about six hours. They go through an enormous amount of pathos and explanation, and the defendant's personality is kind of revealed as this rather soft-spoken, incredibly naive person who feels terrible about what has happened. And the police look very manipulative and tricky and disingenuous. Whereas when you see the February 14th statement, which is less than an hour long, and it's kind of a greatest hits of the, of the, what took place on the 13th. It covers the identical territory. Even, they even bring in the same doll and have him whack it around in the same way. And that, he, he looks, he doesn't look as, as anywhere near as sympathetic. But it remains the case that had the February 14th statement been excluded, there is no way the defense would have sought to introduce the February 13th statement. So why is it that your client here isn't forfeiting this argument in light of the fact that he didn't bring in that February 13th statement? Well again, I, I think it's because we need to recognize that it was simply in reaction to the court's ruling regarding the 14th. Given that the February 14th statement was coming in, the February 13th statement became more of an asset. Only because it, it, it kind of explained the 14th. It made the defendant look slightly better. But certainly, the defense wouldn't have sought to introduce the February 13th statement if the 14th had not already been ruled admissible. So they were just trying to, to make some lemonade out of their lemons. But taking this in chronological order, and I know you're trying to cover all bases, but rather than going back and forth. As I understand it, where you have the facts alleged here, if there, if the court were to find there was no evidence to support a finding of deliberateness, deliberateness on the part of the police to withhold Miranda, our analysis ends, correct? Well, I think we need to look at the way that these things have been analyzed in, in Lopez and Alfaro too. Because deliberate, you know, in Siebert, it, it apparently truly was, the, the police said candidly, we did it, we were using that technique. In Alfaro and in Lopez, the police did not say they had used that technique, but the court found, how else, what else could explain this? Right, but what I'm getting at is, even if you find that there is deliberateness, first of all, I think you have to find it. If the court concludes there was, then you look at whether or not there's curative measure. Yes. So it's, it's a several step process here, correct? That's true, that's true, yes. You have to take it one at a time. But I think what we have to do is look at what deliberate means, when we look at the word deliberate. Well, I agree, because it's in the mix. If we don't find there's deliberateness, then we don't get into the curative measures issue. Yeah, I, I believe that, you know, the, the, the tort standard, knew or should have known. When we're talking about professional police officers here, that certainly, we can't have a, a rule of law where just because a, a, the, you know, the police can make a grotesquely negligent mistake and then say, well, I didn't do it on purpose. Is gross negligence enough for us to conclude it was deliberate? I, I, I don't know if we need to use the term gross negligence, but I think that we should, should recognize that when people are so grossly negligent, when people who absolutely know what they're doing don't do what they must do, that that is the functional equivalent of deliberate. Counsel, what about the state probably argument anticipating, okay, even if we were to find there was some deliberateness, there was some disingenuousness here, Miranda warnings were given before the second statement was taken. So they may argue there was curative measures taken here that he got Miranda albeit midstream in the interrogation process, so tell us why the curative measures that were attempted here are insufficient under the law. I'd be happy to, the, the, the things that are looked at, the things that the court looks at for curative measures is really whether or not the defendant would have an idea when he is warned that he is kind of starting over. You know, whether this is not a continuing process, but this is, he, he's in a new, it's a brand new day and he can choose whether or not to talk to the police. And the things that you look at for that is the timing of the warned and the pre, and the unwarned statements. How close they are in time. The setting, whether or not the setting is the same, whether or not the same police officers are involved. The completeness of the pre-warned or unwarned statement versus the general element. So why weren't they met here? What did the police fail to do that they should have done? Well, they did a lot of things. The first thing is that they had the, the, the officers who were involved was Rinalo, who was one of the two that was involved at the very outset at 1 PM on the 13th. He was in again from 5 to 8 PM on the 13th, and so he was one of the last officers that talked to the defendant on the 13th. On the 14th, here he is again, the same guy, so we do have that continuity of the officer. Although it's not in the same police station, it's the same type of a room, the exact same decor, the very tiny interrogation room. Rinalo gave the Miranda warnings, but he rushed through them in a very perfunctory way. We have both a transcript and a digital recording of that, that just shows how he just said, just initial here, if you understand, he just kept it going, I just need to do this. When the defendant was told he had the right to counsel, he actually kind of started to ask, is that right for right now, or? And Rinalo just said, oh. He never really answered the question, he said, just say yes or no or say yes or no. Yeah, yeah, yeah, and then immediately went into comments about the acoustics of the room and started asking him, telling him, well, we've got to help these doctors. And the next question he asks is whether or not they've ever taken the baby's temperature using a rectal thermometer. And so it's completely moved away from whether or not he wanted to have an attorney. The interrogation, as I said before, covered the identical territory, it was just kind of a condensed version of it. They pulled in the dial, it was just like a reenactment. They used the same ploy of we need to help your son, we need to have information from you so that he can be treated. And coupled with we know you didn't do anything wrong, we know it looks like you did, but we know you really didn't. And the only intervening circumstances between when he went to sleep in a jail cell on the 13th, the night of the 13th, and then got up and had this interrogation the afternoon of the 14th, was a bond hearing at which he was brought into court and his bond was set at a million dollars. The defendant himself testified that he thought that after that bond hearing that he had actually been convicted. He felt he had told them what he did and that he had been convicted and that the million dollar bond that was set made him think that he was in a terrible legal position. And he thought that all that remained was to be sentenced. And clearly he's a very naive man, and this is his very first time through the criminal justice system. But with those kind of feelings, when he's confronted with the same officer again on the 14th, and they just are again telling him, we need to help your son, it's not too surprising. Okay, you'll have a chance to reply. Thank you. Okay, thank you. Good morning, Joan Kripke on behalf of the people of the state of Illinois Council. Before I started, counsel and I were discussing the fact that you accommodated our request to move this hearing, because we both had family emergencies, and we both greatly appreciate that. The question here is, was this defendant such an innocent man that he was duped by the police? And I think what you really have to look at here is, who was intentionally deceiving whom? Who had a story going that was meant to mislead somebody? And it was the defendant and CO. He knew that, as I think he- Wait, wait a second. Is your position that any time a defendant tells something less than 100% of the truth, there can never be a Miranda violation? No, no. Okay. But what I'm saying is that- I hope it's not your position. No, it's not our position. What I'm saying is that the defendant and CO set up a scenario that created the initial confusion that was going on here. Now I'm not saying that that absolves the police from sorting this out, but they continued with this. First of all, CO came in, the mother came in and said, I live in Bolingbrook with my mother. Bolingbrook police are called in, they ascertain that she really doesn't do that. Now the defendant's involved and at some point he shows up at the hospital, he leaves the hospital, goes to work, comes back. And they have already discussed this. Well, we don't really want them to know because he realizes he's in trouble. He's close to 30 and she's a teenager and they're sleeping together. So already he knows he's got a sexual offense possibly pending against him. But I guess I'm getting a little concerned because you seem to be implying at least that the conduct of the defendant somehow has a bearing on whether or not Miranda warnings should be given when somebody is in a situation where he's transported to the police station at the request of the police. And they start asking him incriminating questions. I don't see that the conduct of the defendant enters into the analysis. Are you going to show that it was a good faith mistake? Yes, this was a good faith mistake in that once they finally sort out who's who and what's what, we now have the Lombard, the Bolingbrook police who are involved, they're gone. Now we have the Lombard police who are called in and the major crimes task force is called in. And as one of the, I believe it was Detective Ranallo testified, I can't remember who it was, said there were several agencies involved with 25 to 30 people milling about doing various tasks. All true, however, when they get to the interview room, it's Ranallo and Roberts initially, they're the first officers to interview the defendant, correct? Correct. They do not provide Miranda warnings to the defendant at any time, correct? Correct, and we conceded them. And they ask him, and that's probably why you conceded the confession, was it admissible if it had anything to do with hurting the child? Correct. So we're past that, the Miranda warnings weren't given, okay. Correct. So now I think we need to move into the second day, the 14th interrogation, okay? How did that cure the failure to give Miranda in the first statement? How does that not cure? I don't think we get to the curative issues. I think we get to the question that you were asking. On deliberations? Yes. Okay. But even in the Siebert case, doesn't it state that even if you find that it is not deliberate, that you go forward and look at the circumstances surrounding the second confession? They really want you to, I think that they end it. I think that Siebert ends it. You can go forward, but I think that it's really a two-step process. If you don't want to go past, if you find that there is not a deliberateness on the part of the case- Counsel, what is deliberate? Does this require an act of conspiracy? Well, in Siebert it did. It was very clear that they sat down and made a plan of how to soften up this witness and to get her to make an incriminating statement, and then they went on. It was this one-step, two-step. They also, in the other cases, such as Alfaro and- Lopez? Lopez. Those were factually very different cases. In Lopez, it was a 15-year-old boy who was there and taken from his parents' home. And that's different to have a juvenile from an adult, and even an adult who may never have been arrested before. This man was not so naive because, as I said before, he was planning how to shift the blame to CO because they figured she'd be treated less harshly. He already knew that he was in trouble and he was going to be treated as a suspect because that's what his little plan with CO reveals to us. Is this gross negligence, as counsel alluded? It may be gross negligence, but gross negligence is not the standard. And we look at- That's what we keep asking you. What is the standard? What is the standard? What is deliberate? Not what it isn't, but what is it? I think that according to Siebert, what it has to be is the police intend to do this to get a certain result. So that in- Intended from the beginning. In the absence of the police officer testifying that this was our plan all along. There can never be a finding of deliberateness. No, because the courts have said no officer's going to get up and say, we planned to do this. They're just not going to do this. But so I think what we have to do is look and say, what did the police say happened here? And what were their words when they went, uh-oh, where are the Miranda warnings? They, at 8 o'clock on February 13th, they read the defendant the charges against him. And then he was transported to the DuPage County Jail. Later in the, and then he is, the defendant is arraigned. Yeah, he was a bond holder. Yes, bond holder, but he was appointed counsel. He asked for and was appointed counsel at that point. So he was, so he, the right to counsel, the Sixth Amendment right to counsel attached at that time. So then why did the police officers go in and speak to him without his counsel? Doesn't that weigh in? Because the police are not required to do that. When they take the second statement from him, he's already hired a lawyer, correct? He has not hired a lawyer, he's been appointed counsel by the court. Okay, well, it's his hiring a lawyer, he's indigent, that's his lawyer. So does, is that not a factor, that they go in and take a statement from a defendant who is now represented by counsel? No, because Montego versus Louisiana says that the Sixth Amendment right to counsel attaches in a non-custodial setting. And that, even if the, as in this case, they request counsel, that does not prospectively invoke your right to, your Fifth Amendment right to counsel under your, your right to counsel under Moran under your Fifth Amendment rights. It has to be in a custodial setting. And that the police do not have to go over with the defendant what, you know, that you have counseled, do you still want to speak with us? What they have to tell him is, you have these rights. And when the defendant said, well, does that mean like now I get counseled? They don't, was, was Ranallo not very forthcoming with that? But he's not their counsel. He, he's not the defendant's counsel. He doesn't have to tell the counsel what he can and cannot do at that time. And what, what, and when the defendant said, well, does that mean now? That's been held not to be an invocation of your Fifth Amendment rights. It has to be something very, I want my counsel, I don't want to say anything now, and then the person remains silent. Because I think we understand your position, that if we were to find that the police, fair to give Miranda here, was inadvertent, it was an innocent mistake, it was not part of deliberateness. I think, arguably, the analysis ends, but rather than put all of your eggs in one basket, so to speak. If we were to find there was some deliberateness there, tell us why what happened after that would have cured the problem with the deliberateness. Okay, I think, first of all, the attenuation is, is clear from the huge amount of time that went on. Again, February 13th, 8 o'clock, the charges are at the defendant. He's taken from the Lombard Police Department to the DuPage County holding cell. He said, and this is believable, certainly, he couldn't sleep while he's in a holding cell with ten other people. He's then put, however, in his own smaller cell, and he said, I went to sleep. So he had sleep at that time. Then he has this bond hearing where he is appointed counsel. They said early in the morning, I'm guessing, 8, 9 o'clock sometime before regular, there's a regular, I don't know. I don't know if they have a special hearing, I have no idea what time that went on. But it wasn't until later in the afternoon, and he said he's now in his own cell. He's placed in what he calls his own cell for whenever the bond hearing went on until 2 o'clock in the afternoon. He said, no, I sit around and watch TV. So if he was truly so exhausted and so overwhelmed and so emotionally overrun, he's watching TV. I'm not saying, he didn't go to sleep when he had the opportunity to do that and to get rest. And maybe this was a restful activity for him. Nevertheless, what the police said is, while they were closing down their investigation and gathering their papers. One hand's looking, where's the Miranda warnings? Where are the Miranda warnings? They start asking around. What Rinaldo said, what Detective Rinaldo said was, well, I called this person. Then that person called this person. We ascertained they weren't there. Now, we're still on the issue of deliverables, so let's get past that. Yeah, okay, so what Rinaldo said was, I asked. I asked them, okay, well, you're right, that's also a deliberate mistake. So what happened? So all of this is curative, because there is this huge amount of time. What's curative? Asking where the Miranda form is curative? No, all this amount of time that has passed, because in the other cases, they were. Okay, so we have the amount of time. We have the amount of time, which is huge. It's from 8 o'clock the other night until 2 in the afternoon. What else do we have here? It seems if ever there was a case for a careful reading of Miranda the second time, this would have been the one. The first time. Well, the first time. But they read him the rights. How did they read him the rights? Was it cursory? Did it imply that the first confession would be admissible? The defendant stumbles over his words, Rinaldo tells him not to worry about it. They have the same information on the tape. What does that suggest? That is suggested, the police are not required to tell him that the prior statements don't count. They're not required to do it. Would it have been preferable? Yes. Can they create an inference that it is admissible? I don't think, I'm sure they could. I don't think that they did. I don't think that they did. Ms. Krupke, even if you find that the failure to give Miranda warnings was not deliberate, are you saying that Missouri versus Seabird does not suggest that in addition to finding it's not deliberate, then you move on to some factors that can be considered to determine whether or not it should be admissible? My understanding of it was that it was a one-step, two-step process, that you had to first meet that threshold of deliberateness. That's my understanding of it. I would go back and, I mean, I can go back and read it again, it's not going to help now. But that's my understanding of what Seabird is saying, that you have to meet that deliberateness standard. I mean, why would you be looking at curative measures if there's nothing to cure? If Miranda is then given, and if you're not curing anything, if you're now saying it was not deliberate, but that's a cursory manner. I don't have a problem with your argument, your analysis, though I think that's sustainable law. But, what do you make of the colloquy, and I think it's significant, where there's Rinaldo is advising a defendant of his Miranda rights, and he has the right to have an attorney present. Defendant says is that for now, and Rinaldo answers, you answer yes or no. Doesn't that sort of deflect the question? It does deflect the question, but Rinaldo is not his counsel. He does not have to explain, he does not have to answer that for the defendant. Would it have been preferable? Of course, it would have been preferable. But the defendant never said, I didn't understand these rights, I'm confused. He said it later, but he knew he had counsel. He had been appointed counsel in the morning, he had asked for counsel. He then later said, and I think that this is an incredible statement, given the fact that, as I said at the beginning, he had already concocted a plot with CO to deflect the charges or any kind of guilt from him to her. He said, well, I don't know, I thought I was just waiting for sentencing. Now, granted, this man has never been charged before, but he's not shown to be incompetent mentally. They've never made this allegation. Well, that all goes to voluntariness and knowing waiver. But I think the issue that we have before we even get there is, in my mind, is the deliberateness. And after we find that it's deliberate, or after we find that it is not deliberate, do we stop there? I think yes. I believe Siebert says, once you determine it's not deliberate and they give Miranda warnings, that's the answer. Then that's the answer. And so that goes to the question of whether or not it was a cursory rendition of Miranda. And why wasn't it, in this case, looking at the DVD, a cursory recitation, why wasn't it? But let's say that they had been given Miranda at the very beginning from the February 13th on, and they gave it in the same manner. Would we be here saying that he didn't understand his Miranda rights? Probably not, but isn't there a heightened concern here under the case law? I mean, you've got somebody who's already given a full confession. You have the issue of deliberateness. Isn't there an implied issue of whether or not somebody should be even more careful? You've already got a problem. You're the police. You know you probably have a problem with the first confession. Okay? Isn't it time to be careful? I will concede that, but I'm not sure that the confession was not, I mean, what's, did they deliberately rush through it? Just, I mean, they didn't omit anything. They didn't, they gave him the Miranda warnings. And it's sort of, I have a hard time understanding that if they had done it that way from the beginning, why that would have been okay then and not okay later on. Because then you're setting up two different standards of how it's okay to give Miranda. But don't we have to look at every Miranda case in terms of the entire context of what transpires? Well, that's true. But again, I don't, that is very true. But even if they, even in another case, you have these circumstances. They come in and the defendant says, you mean now, I get them now? We don't have to say, yes, let us- But isn't that also right after, hours after he had already asked for an attorney and an attorney had been given to him? Correct. And now a police officer comes in again and says, do you want an attorney appointed? So I, and his response is, now? Like I already had one? Didn't I just do that a few hours ago? I don't think that's what he said. But nonetheless, that's what happened. He's given an attorney at 8 o'clock in the morning. Right. And then we have somebody coming in at 2 o'clock in the afternoon saying, do you want, do you have an attorney, if you can't afford one, one will be appointed for you? And he responds, is that for now? Don't you see that as being perhaps a little different than had there never been a prior statement? Had he never been to bond court and that Miranda warning had been given, whatever, late on, I guess, around midnight on the 13th, coming in from the 20th? But he also doesn't, but his, but his questioning of it is not, but, okay, so regardless, he's told twice now, even if he's confused about, you know, wasn't I just given one before? He now knows that he's entitled to the lawyer. Yet he never said, okay, bring the guy in. I want him here now. I don't want to talk to you. That's something that he must invoke. And the defendant is saying, well, where's the waiver? We don't have to provide a waiver. There are counties that do provide a waiver. I think that that's an insurance policy for them to say, yes, we read it. Yes, the guy initialed it. He did it in English. He did it in Spanish, whatever language it is. But now the guy's also putting his signature on it saying, I understand I have those rights. He's telling you again, and I waived it. That's their insurance policy. But here, but what the case law says is, no, he must actively invoke. And so when he makes these vague, when a defendant and this defendant make a vague kind of questioning inquiry about those rights, that's not an invocation. And again, I agree, I believe that CBER, once you get past the deliberateness and decide it's not deliberate, you don't get into this latter analysis. And again, I just don't believe that this defendant was so naive that he did not know what was going on. One more. Do you wish to make any final sum up? I just want, if you, just one second if I can look through my notes to see if there's something I might have. No, I just, just to say that I believe that this was a, there was one step to CBER that has to be met, and that once you meet the threshold of not showing that there was a deliberate act on the part of the police, and in this case, I think it was just one big mess, and it was a huge mistake. You don't get into the other attenuating factors, but if you are going to go past this and look at the other attenuating factors, I think that the fact that there was a huge amount of time that he was given counsel upon his request at the initial bond hearing, that they came in later, gave him the Miranda warnings after he had plenty of time to sleep and think it over, and even though he may have been confused, as you said, well, you mean again I get a lawyer? He still never asked for that lawyer, and he went ahead and spoke to them. Thank you. I think we can't lose sight of the fact that what we're really talking about here is whether or not the defendant's confession was knowing and voluntary, and because of that, even if, even if we, this court does not decide that what happened, that what the police did on the 13th was a deliberate use of an interrogation tactic, it is still, the events of the 13th are still factors in what happened on the 14th, and all of this has to be looked at as a whole, and when we look at it as a whole, can we say that the way the defendant was treated on the 14th in the wake of what had happened on the 13th, can we say that that was a knowing and voluntary waiver of his right, that he was in a position to know he could do that? Is that the issue that's before us today, whether or not it was knowing and voluntary, or is the issue before us whether or not he was improperly Mirandized deliberately? Isn't that the issue before us? It's kind of all part of the same thing. The reason we have a concern about that is because if he wasn't, then we have questions about whether or not this was a knowing and voluntary confession. With respect to the Siebert case, and Ms. Kripke believes that if you find that it was not a deliberate behavior in failing to give the Miranda, so if you find that it was not deliberate, do we stop there, or do we go on and look at other factors? I argue that we would still go on and we would still look at whether the circumstances that surrounded the confession on the 14th were such that the defendant could have understood his Mirandas and could have knowingly waived his right. Did he understand that he had the right to remain silent on that day? But when they set out these factors, the factors that you consider, and they set those out, I believe it was, was it the Lopez case, they discussed the Missouri v. Siebert case, and they set out the factors to be included. They don't talk about knowing involuntariness so much as they talk about the timing, et cetera. Where are you coming up with the suggestion that we have to look at knowing involuntary waiver? Was that argued in your briefs? Well, yes, it is. It is. It's the whole general, the whole issue in any case that involves that. Well, that is the issue in any case, but is that the issue before us today? Well, the issue before us today, you are right, is definitely the Siebert issue. And a little bit, Miranda, regarding this, what happened with his request for counsel at the end, which is another thing that needs to be considered. And I do want to say, apropos to that, that what we have to look at is whether or not the defendant even really had an opportunity to waive his right to counsel the way that the events unfolded. Because as soon as he started asking his questions, this is for now, or he was forcibly taken off the subject. Rinaldo just buzzed him right away from it, started talking about other things. It led right into the next thing he ended up with. It's a rather chunky paragraph in the transcript. Does the police officer who gives Miranda warnings also have to elicit a waiver? Or is it, as counsel says, all I have to do is tell you your rights, and if you don't invoke them, that's your tough luck? Well, it's he has to tell him his rights and give him an opportunity to waive. It doesn't mean that he has to. I don't think the police have to directly say, do you waive your rights? That's that case that I can't pronounce the name of, Burgoyne-Thompkins. Even though they don't have to, you have to have circumstances that show that the defendant had an opportunity to waive his rights. And here, the defendant was just buzzed right over it and brought right back into the same scenario, a reenactment of what he had endured yesterday and the day before, where the doctors need to know what he can tell them so that they can treat his child. And it was just totally, totally unfair. So for all those reasons and those in our briefs, unless you have more questions. Okay, I ask you to reverse his convictions and to give him a new trial. Thank you. Thank you both very much. Any decision in due course?